[Nos. 23075–1–I; 23239–8–I. Division One. March 18, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. HERARDO MORA SANCHEZ, *Appellant.*

THE STATE OF WASHINGTON, *Respondent*, v. JOSE ANGEL SARINANA, *Appellant.*

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association*, for appellant Sanchez.

*James R. Short*, for appellant Sarinana.

*Norm Maleng, Prosecuting Attorney*, and *Carol Spoor, Deputy*, for respondent.

BAKER, J.—Jose Angel Sarinana and Herardo Mora Sanchez were convicted in a bench trial of violating the Uniform Controlled Substances Act by delivering cocaine. The trial court also found that both defendants were armed with a deadly weapon at the time of the offense. Sanchez

appeals his conviction claiming the trial court erred by refusing to require disclosure of an informant's identity. Sarinana raises the identical issue and also contends the trial court erred by finding that there was sufficient evidence to convict. The State cross–appeals, contending the trial court failed to consider information pertaining to an alleged prior felony conviction when imposing the sentence on Sanchez.

## I
### FACTS

Seattle Police Detective Mario Navarrete testified at trial that he received the following information: that a person named Manuel had been trafficking in cocaine in Seattle; that Manuel had recently been arrested in Yakima; that the telephone pager through which he conducted his business was still active locally.[1] Navarrete testified that after receipt of this information, he called the pager number and eventually arranged to purchase a quantity of cocaine.

Sanchez and Sarinana arrived by car at the appointed time and location, a little–used corner of a grocery store parking lot. Sarinana exited the front passenger side of the car and got in the backseat. Navarrete approached the vehicle, introduced himself to Sanchez, and took Sarinana's place in the front seat. Once Navarrete was in possession of the cocaine he signaled the arrest team to approach. As the arrest team was arriving, Sanchez spotted them in the rear view mirror. Noticing this, Navarrete asked, "'Are those friends of yours?'" He then saw Sarinana put his hand in his pocket, and he saw the outline of a handgun inside the pocket. Navarrete pinned Sarinana's hand and the gun in Sarinana's pocket. At the same time he drew his own weapon on Sanchez and identified himself and the others as police officers.

In the course of arresting Sarinana and Sanchez, the officers recovered an additional 27.2 grams of cocaine and

---

[1]Defense counsel did not object to this testimony.

$2,470 in cash from Sanchez's person. The firearm taken from Sarinana was in working condition and loaded with four rounds of ammunition.

## II
### Disclosure of Informant's Identity

Prior to trial Sarinana and Sanchez had moved to compel the State to disclose the identity of the informant in the case, or for the court to hold an in camera hearing. The motion was denied.

The issue of the informant's identity arose again during trial. On cross examination Navarrete acknowledged that he had testified about communications he and his partner received from an anonymous citizen. Sarinana then inquired as to whether the officers were able to obtain the name of the informant. The State objected. Citing *State v. McCoy*, 10 Wn. App. 807, 521 P.2d 49 (1974), Sarinana and Sanchez argued that because Navarrete had testified to the substance of the communications with the informant, the State had waived its privilege of nondisclosure of the informant's identity. The trial court ordered disclosure. The defense then inquired of Navarrete whether he had the means available to obtain the name of the informant, to which Navarrete responded that he did not. The trial court ordered the State to take all reasonable and necessary means to obtain the name of the informant.

When trial resumed the following Monday, the State moved for reconsideration. The trial court reconsidered its prior ruling and held that although the privilege had been waived, the informant's statements did not tend to prove the guilt of either defendant. Therefore, the court held the informant's identity was not relevant to any issue in the trial and disclosure was not required.

The privilege of the State to withhold the identity of an informant is recognized by court rule, statute, and case law. CrR 4.7 provides in pertinent part:

**(f) Matters Not Subject to Disclosure.**

. . . .

(2) *Informants.* Disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant.

RCW 5.60.060(5) provides:

A public officer shall not be examined as a witness as to communications made to him or her in official confidence, when the public interest would suffer by the disclosure.

 The privilege of nondisclosure is granted to preserve the informant's anonymity and encourage such persons to disclose knowledge of criminal activity to officers charged with enforcement of the law. *State v. Malone,* 69 Wn.2d 872, 873, 420 P.2d 676 (1966). The privilege thus furthers the public interest in law enforcement. *State v. Harris,* 91 Wn.2d 145, 148, 588 P.2d 720 (1978).

However, the informer's privilege is not absolute. If the informer's identity "'is relevant and helpful to the defense . . . or is essential to a fair determination of a cause", the trial court may require disclosure. *State v. Thetford,* 109 Wn.2d 392, 396, 745 P.2d 496 (1987) (quoting *Roviaro v. United States,* 353 U.S. 53, 60–61, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957)). In determining whether an exception should be made to the privilege of nondisclosure, no fixed rule is justifiable. *Roviaro,* 353 U.S. at 62. The trial court must balance the public interest in protecting the flow of information against the defendant's right to prepare a defense. The proper balance depends upon the facts of the particular case, "'taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" *Harris,* 91 Wn.2d at 150 (quoting *Roviaro,* 353 U.S. at 62); *State v. Vargas,* 58 Wn. App. 391, 395, 793 P.2d 455 (1990).

In *State v. McCoy,* 10 Wn. App. 807, 810–11, 521 P.2d 49 (1974), this court held that where the State unnecessarily inquires on direct examination into the substance of the communication made by an unidentified informant, the conditional privilege against disclosure may be waived.

Relying on *McCoy,* Sarinana and Sanchez contend that the State waived the privilege by eliciting Navarrete's testimony pertaining to the communication received from the informant. They assert that once such evidence is admitted, disclosure of the informant's identity is required. The State argues that disclosure is not automatically required under such circumstances, but that the trial court must still balance the *Roviaro* factors in deciding whether to compel release of the informant's name.

In *McCoy,* the State questioned a police officer at trial regarding the content of the statements made by a confidential informant. The officer testified that a known informant advised him that the defendant, whom he identified by name, would be traveling in a certain vehicle along a certain route and would have in his possession a quantity of marijuana. In fact, the defendant was stopped while driving the described vehicle, and the car did contain marijuana, which provided the basis for the crime charged. *McCoy,* 10 Wn. App. at 809–10. On cross examination counsel for the defendant sought to elicit the name of the informant. The State objected. On appeal, this court determined that the State's privilege had been waived by its inquiries on direct examination.

■ *McCoy* is distinguishable from the instant case. There, the informant's statements revealed specific personal knowledge about the criminal activity of McCoy. Here, on the other hand, the informer merely alerted the police to the possibility of criminal activity perpetrated by unidentified persons.[2] The crime was then committed in the presence of the officer. The informer was a mere tipster,

---

[2] While we decline to extend the *McCoy* rationale to these facts, nonetheless, in an appropriate case, use by the State of material communication from or information concerning an informer is a factor to consider in the determination of whether disclosure should be ordered. *See, e.g., State v. Knox,* 4 Kan. App. 2d 87, 603 P.2d 199 (1979) (State's repeated reference to presence of informer during drug transaction in its case–in–chief had effect of bolstering State's case, while denying defendant his right to confrontation).

furnishing the police with information which provided a lead in investigating the case.[3]

Knowledge of the identity of the informer thus could serve no purpose material to the defense of Sarinana and Sanchez. Therefore, the trial court properly ruled that the informer's identity need not be disclosed. *See McCulley v. State,* 257 Ind. 135, 272 N.E.2d 613, 616 (1971); *Ludlow v. State,* 302 N.E.2d 838, 842 (Ind. Ct. App. 1973), *rev'd on other grounds,* 262 Ind. 266, 314 N.E.2d 750 (1974).

## III
### SUFFICIENCY OF EVIDENCE

■ Sarinana contends there was insufficient evidence in the record to support his conviction as an accomplice. In reviewing the sufficiency of the evidence in a criminal matter, this court must determine whether, after viewing the evidence most favorably to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 220–21, 616 P.2d 628 (1980). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Porter,* 58 Wn. App. 57, 60, 791 P.2d 905 (1990) (quoting *State v. Spruell,* 57 Wn. App. 383, 385, 788 P.2d 21 (1990)).

RCW 9A.08.020(3)(a)(i) provides that a person is culpable as an accomplice if he or she "solicits, commands, encourages, or requests" another to commit a crime, or aids in the planning or commission thereof, knowing that such an act will promote or facilitate the commission of the

---

[3]We note that federal courts have held that disclosure is not required when the informer is not a participant in, or witness to the crime charged. *See United States v. Ortiz,* 804 F.2d 1161, 1166 (10th Cir. 1986); *Hawkins v. Robinson,* 367 F. Supp. 1025, 1035 (D. Conn. 1973); *see also United States v. Varella,* 692 F.2d 1352, 1355 (11th Cir. 1982) (cross examination could be limited where informants were witnesses but not integral participants), *cert. denied,* 463 U.S. 1210, 464 U.S. 838 (1983); *accord, State v. Zamora,* 534 So. 2d 864, 870 (Fla. Dist. Ct. App. 1988) (disclosure not required where sole showing was that informant was merely present during illegal drug transaction or acted as mere tipster); *State v. Moose,* ___ N.C. App. ___, 398 S.E.2d 898, 901 (1990) (mere tipster's identity need not be disclosed).

crime. However, "[m]ere knowledge or physical presence at the scene of a crime neither constitutes a crime nor will it support a charge of aiding and abetting a crime." *State v. J-R Distrib., Inc.,* 82 Wn.2d 584, 593, 512 P.2d 1049 (1973), *cert. denied,* 418 U.S. 949 (1974).

Sarinana concedes that he was present in Sanchez's vehicle at the time Sanchez delivered the cocaine to Navarrete. He maintains, however, that the State failed to show that he had associated himself with, participated in, or had prior knowledge of the transaction which served as the basis of the charge. He claims the evidence establishes only that he was present at the scene and may have had knowledge that a crime was being committed.

The facts presented at trial, when viewed most favorably to the State, support the court's finding of guilt. Sarinana accompanied Sanchez to the location agreed to in the telephone conversation with Navarrete. That location was removed from the main area of the parking lot. Immediately upon arrival, Sarinana got out of the front passenger seat and into the back of the car. When Sanchez observed the arrival of the arrest team, Sarinana made a move for his gun. Navarrete was able to reach over the seat and prevent the weapon from being drawn. The gun was later found to be loaded.

A reasonable inference can be drawn from these facts that Sarinana knew Sanchez was there to sell cocaine and that the purpose of Sarinana's presence was to aid in carrying out the illegal sale by arming himself with a loaded weapon. The record thus contains sufficient evidence to support a finding of guilt beyond a reasonable doubt. We affirm Sarinana's conviction.

## IV
### SENTENCING

On cross appeal, the State contends that an alleged 1986 felony conviction should have been included in calculating Sanchez' offender score for sentencing purposes, arguing that the court erred by refusing to consider a copy of the

judgment and sentence from the prior conviction. Sanchez claims the State failed to provide documentary evidence of such a conviction, and failed to prove Sanchez was represented by counsel or waived representation of counsel at the time of the alleged prior judgment and sentence.

The initial difficulty confronting the State was the fact that the alleged prior conviction was under another name. In order to resolve the question of identity, the State offered certifications from a fingerprint examiner and the prosecutor. The certifications established that fingerprints taken at a jail booking procedure in 1986, and bearing the name Mario Sanchez–Gonzalez, matched those taken from Sanchez in 1988 at the jail booking procedure for the current charge. However, no link was made between the 1986 fingerprints and any subsequent conviction.

In a sentencing hearing under the sentencing reform act, the State has the burden of establishing the defendant's criminal history by a preponderance of the evidence. RCW 9.94A.110; *State v. Ammons,* 105 Wn.2d 175, 185–86, 713 P.2d 719, 718 P.2d 796, *cert. denied,* 479 U.S. 930 (1986). At best, the certifications proved that Sanchez had been arrested in 1986. Therefore, the certifications alone were insufficient to establish a prior conviction.

The State did not offer any additional evidence before it rested. Only after defense counsel argued that the certifications were inadequate, and that the State had failed to prove Sanchez was represented by or had waived representation of counsel at the time of the alleged prior conviction, did the State move to reopen its case and inform the court that it had before it the 1986 judgment and sentence. The trial court denied the motion to reopen and set the offender score at zero. Sanchez was sentenced to 24 months confinement based upon a sentencing range of 24 to 26 months.

Unfortunately, the State made no formal offer of proof as to what the 1986 judgment and sentence would show; nor was the document offered into evidence. Because it is not part of the record before this court, we have no way of

evaluating whether or not it would sufficiently establish that Sanchez had a criminal history.

A motion to reopen a proceeding for the purpose of introducing additional evidence is addressed to the sound discretion of the trial court. The manner of exercising that discretion will not be disturbed on appeal absent manifest abuse. *Fuller v. Ostruske,* 48 Wn.2d 802, 808, 296 P.2d 996 (1956). Abuse of discretion is discretion exercised on untenable grounds for untenable reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

We agree with the State's observation to the trial court that the parties are entitled to a "fair determination" of the matter. Nevertheless, even though we might have decided the issue differently, we must conclude that the court's decision to proceed with the evidence before it was not an abuse of discretion.

Affirmed.

WEBSTER, A.C.J., and COLEMAN, J., concur.